UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JONATHAN SOLOMON,

              Plaintiff,

     v.

THE CITY OF ROCHESTER, ROCHESTER
POLICE DEPARTMENT, and ROCHESTER
POLICE OFFICER(S) IDENTITIES
UNKNOWN,

              Defendants.
_____

**DECISION AND ORDER**

6:17-CV-06659 EAW

## INTRODUCTION

Plaintiff Jonathan Solomon ("Plaintiff") brings this action against defendants the City of Rochester (the "City"), the Rochester Police Department (the "RPD"), and unknown RPD officers (collectively "Defendants"), alleging claims based on an incident on June 25, 2016, wherein the unknown RPD officers allegedly attacked and beat him during the course of an arrest. (Dkt. 1). Currently before the Court is a motion for summary judgment filed by the City and the RPD (collectively "Moving Defendants"). (Dkt. 10). For the reasons set forth below, Moving Defendants' motion is granted.

## BACKGROUND

**I.    Factual Background**

The following facts are taken from Moving Defendants' Rule 56 Statement (Dkt. 10-6) ("Defendants' Statement") and the evidence submitted in support thereof, which was

submitted in compliance with Local Rule of Civil Procedure 56(a)(1). Plaintiff did not, as required by Local Rule 56(a)(2), submit an opposing statement of facts that included a response to each of the statements set forth in Defendants' Statement. *See* L. R. Civ. P. 56(a)(1) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."). As discussed further below, Plaintiff in this case failed to file any response whatsoever to the instant motion.

The Court has discretion to excuse a party's failure to comply with Local Rule 56, and the Second Circuit has indicated that a district court should not deem unopposed facts admitted when those facts are unsupported by the record. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001). However, in this case, each factual assertion within Defendants' Statement is supported by a citation to the exhibits and declarations they have submitted. Accordingly, the Court deems the factual allegations set forth in Defendants' Statement admitted for purposes of the instant motion.

On June 25, 2016, Plaintiff had two outstanding bench warrants for his arrest. (Dkt. 10-6 at ¶ 2). The first was issued on May 18, 2016, by Rochester City Court Judge Charles F. Crimi related to a charge of assault in the third degree and the second was issued on May 25, 2016, by Rochester City Court Judge Melchor E. Castro related to a charge of felony aggravated unlicensed operation of a motor vehicle. (*Id.*; Dkt. 10-7 at 2, 4).

As of June 25, 2016, Plaintiff was also wanted in connection with the first-degree kidnapping and second-degree assault of Devon Holmes on May 13, 2016. (Dkt.10-6 at ¶ 3). Plaintiff and two accomplices had kidnapped Holmes at gunpoint and then:

> [F]orced him into a car, bound him with rope, pistol whipped him, assaulted him, drove him to a vacant house located at 649 Jay Street in Rochester, lowered him through a window into the basement, tied him to a chair, beat him with a board and pistol whipped him, then threatened to ignite a Molotov Cocktail and burn the house down with him in it, all related to the belief that Holmes had stolen money from [Plaintiff's] mother's home.

(*Id.*). Holmes had freed himself and called 911 when Plaintiff and his accomplices left the house. (*Id.*). Holmes identified Plaintiff from a photo lineup as having orchestrated the kidnapping and assault. (*Id.*).

Plaintiff fled to Florida to avoid arrest, but returned to New York at some point prior to June 22, 2016. (*Id.* at ¶ 4). On June 22, 2016, Plaintiff and an accomplice carjacked Plaintiff's brother's girlfriend at gunpoint. (*Id.*). Plaintiff was also wanted in connection with this carjacking. (*Id.* at ¶ 5).

RPD officers Sam Giancursio ("S. Giancursio") and Pat Giancursio ("P. Giancursio") attempted to arrest Plaintiff on the morning of June 24, 2016, at 104 Jay Street in Rochester. (*Id.* at ¶ 6). However, Plaintiff saw the officers outside and leapt from a second story window to avoid them. (*Id.*). A K-9 dog attempted to track Plaintiff but failed due to an abundance of pedestrian traffic in the area. (*Id.*).

On or about June 24, 2016, the RPD obtained a search warrant for Plaintiff's cell phone. (*Id.* at ¶ 7). On June 25, 2016, S. Giancursio observed Plaintiff's vehicle in a

parking lot and further observed Plaintiff standing outside the vehicle with a few other men. (*Id.*). S. Giancursio was informed that a "ping" had been established on Plaintiff's cell phone in the same parking lot. (*Id.*). S. Giancursio and P. Giancursio followed Plaintiff's vehicle when it left the parking lot and effected a traffic stop. (*Id.*).

Plaintiff's uncle Leroy Lucas ("Lucas") was operating the vehicle. (*Id.* at ¶ 8). Lucas pulled into the driveway at 234 Maple Street in Rochester and Plaintiff, who was in the front passenger seat, leapt from the car and began running through backyards. (*Id.*). S. Giancursio and P. Giancursio, who were both operating marked police cars and in full uniform, shouted at Plaintiff to stop and that he was under arrest. (*Id.*). RPD officer Angel Pagan ("Pagan") and RPD sergeant Michael Malecki ("Malecki") both heard what was happening over their police radios. (*Id.* at ¶¶ 9-10). Pagan and Malecki, who were both driving marked police cars and in full uniform, reported to the area and joined in the chase. (*Id.*). All of the officers pursuing Plaintiff knew him to be involved with firearms crimes and they assumed that he was armed and dangerous. (*Id.* at ¶ 11).

Malecki began running toward Plaintiff, shouting "Stop! Get down on the ground! You're under arrest." (*Id.* at ¶ 10). Plaintiff did not obey these commands and instead continued running towards Malecki. (*Id.*). Malecki tried to tackle Plaintiff but Plaintiff pushed him, causing Malecki to fall to the ground and injure his hands and knees. (*Id.* at ¶ 12). Pagan continued to pursue Plaintiff, with S. Giancursio and P. Giancursio following behind. (*Id.*). Pagan saw Plaintiff knock Malecki to the ground and shouted at him to stop running. (*Id.*). Pagan then withdrew his taser and yelled to Plaintiff that he would use the

taser if Plaintiff did not stop running. (*Id.*). When Plaintiff continued to run, Pagan fired his taser, but did not make a successful connection. (*Id.*). Plaintiff continued running and Pagan yelled a second warning. (*Id.*). Pagan shot his taser a second time and hit Plaintiff with both probes, causing Plaintiff to fall to the ground onto his stomach. (*Id.*).

As soon as the taser completed its five-second cycle, Plaintiff attempted to push himself off the ground. (*Id.* at ¶ 13). Pagan attempted to use a defensive tactic known as a forearm strike to hit Plaintiff's left shoulder to stop him from standing up and running again, but because they were both moving, Pagan missed and struck Plaintiff in the left cheek. (*Id.*). Plaintiff continued to resist, struggling to keep his hands under his body to avoid being handcuffed. (*Id.*).

Malecki, S. Giancursio, and P. Giancursio arrived and attempted to assist Pagan in arresting Plaintiff. (*Id.* at ¶ 14). The officers used various defensive tactics, "including blows and knee strikes to the sides of Mr. Solomon's torso and his thighs," to attempt to restrain Plaintiff. (*Id.*). Ultimately, S. Giancursio "delivered a straight punch to the right side of [Plaintiff's] face," which overcame Plaintiff's resistance and allowed Malecki to handcuff Plaintiff. (*Id.*).

Plaintiff was taken to Strong Memorial Hospital for evaluation, per protocol requiring medical evaluation whenever a taser is deployed. (*Id.* at ¶ 15). Plaintiff was noted to have swelling to his left check and discoloration to the white of his left eye and was treated and discharged with over-the-counter analgesics. (*Id.*).

Plaintiff was interviewed post-arrest and the interview was videotaped. (*Id.*). Plaintiff can be seen on the videotape standing and walking, moving all four of his extremities without any apparent distress, drinking water, and wrapping and rewrapping himself in a bedsheet. (*Id.*).

Plaintiff was indicted by a grand jury on charges of kidnapping and assault, and ultimately pled guilty to a lesser kidnapping charge. (*Id.* at ¶ 16). Plaintiff also pled guilty to the felony aggravated unlicensed operation of a motor vehicle charge. (*Id.*). These convictions have never been overturned, reversed, expunged, or otherwise called into questions. (*Id.*).

## II.   Procedural Background

Plaintiff commenced this action on September 21, 2017. (Dkt. 1). Discovery closed on February 28, 2019. (Dkt. 7). Moving Defendants filed the instant motion for summary judgment on April 11, 2019. (Dkt. 10). The Court set a deadline of May 10, 2019, for Plaintiff to file a response. (Dkt. 11). Plaintiff failed to file any response to the motion.

## DISCUSSION

## I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Plaintiff's Claims

Plaintiff's Complaint asserts the following claims: (1) battery by unknown RPD officers; (2) assault by unknown RPD officers; (3) intentional infliction of emotional distress by unknown RPD officers; (4) "civil rights" violations by unknown RPD officers; and (5) "civil rights action" against the City. (Dkt. 1 at 6-9). Moving Defendants seek summary judgment as to all of these claims, on numerous grounds. For the reasons set forth below, the Court concludes that none of Plaintiff's claims are viable.

### A. Claims Against the RPD

Plaintiff has named the RPD as a defendant, but does not identify any of his claims as having been asserted against it. In any event, as Moving Defendants correctly point out, "[a] police department is an administrative arm of the municipal corporation . . . [and] [b]ecause it does not exist separate and apart from the municipality and does not have its own legal identity, a police department cannot sue or be sued." *Nix v. City of Rochester*, No. 6:14-CV-06395(MAT), 2017 WL 3387103, at *8 (W.D.N.Y. Aug. 5, 2017) (citations, quotation, and original alteration omitted). Accordingly, to the extent Plaintiff is attempting to assert a claim against the RPD, such claim cannot survive summary judgment.

### B. Claims Against the Unknown RPD Officers

The Court next considers the viability of Plaintiff's claims against the unknown RPD officers. "Courts typically refrain from dismissing suits against 'John Doe' defendants until the plaintiff has had some opportunity for discovery to learn the identities

of responsible officials." *Kearse v. Lincoln Hosp.*, No. 07-CIV-4730(PAC) (JCF), 2009 WL 1706554, at *2 (S.D.N.Y. June 17, 2009) (quotations omitted). However, "[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the defendant's name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quotations and original alteration omitted). In this case, it has been approximately two and a half years since Plaintiff commenced this action, discovery has closed, and yet he has made no effort to amend his Complaint to identify the John Doe defendants. This alone is an appropriate basis to grant summary judgment as to these claims. *See id.*; *see also Engles v. Jones*, No. 6:13-CV-6461 EAW, 2018 WL 6832085, at *11 (W.D.N.Y. Dec. 28, 2018) (granting summary judgment on claim asserted solely against John Doe defendant where discovery had closed and no attempt had been to identify him).

The Court further agrees with Moving Defendants that, in any event, any attempt by Plaintiff at this stage of the proceedings to amend the Complaint and name Pagan, Malecki, S. Giancursio, and/or P. Giancursio as a defendant would be futile. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (explaining that where an attempt to amend is made in response to a motion for summary judgment, "the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law"). The Court considers the viability of each of Plaintiff's claims below.

### 1. **Assault and Battery Claims**

With respect to Plaintiff's claims for assault and battery, "[a] lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 326 (W.D.N.Y. 2018) (citation omitted), *aff'd*, 765 F. App'x 493 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 63, 205 L. Ed. 2d 42 (2019). "As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest." *Id.* (citation omitted). In this context, reasonableness is "judged from the perspective of a reasonable officer on the scene. . . . at the moment the force is used." *Soto v. Gaudett*, 862 F.3d 148, 158 (2d Cir. 2017) (quotation omitted).

Here, the evidence of record shows that the force used by Pagan, Malecki, S. Giancursio, and P. Giancursio was reasonable as a matter of law. As an initial matter, the grand jury indictment and Plaintiff's subsequent conviction establish that Plaintiff's arrest was lawful. *See Hope v. City of New York*, No. CV08-5022(BMC), 2010 WL 331678, at *2 (E.D.N.Y. Jan. 22, 2010) ("A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986), even if the conviction is the result of a guilty plea to a lesser charge than that for which plaintiff was arrested.").

With respect to the use of a taser by Pagan, Plaintiff was known to Pagan to have been involved in multiple violent crimes (including crimes where he used firearms), he was fleeing the police, he had pushed and injured Malecki, and he was warned that he would

be tasered if he did not stop. On these facts, no rational jury could find that Pagan's use of his taser constituted unreasonable force. *See Wittmer v. City of Oneonta*, No. 5:14-CV-01217 BKS DEP, 2016 WL 11505503, at *7 (N.D.N.Y. Oct. 24, 2016) (holding that no rational jury could find deployment of taser unreasonable where the plaintiff had punched someone in the head and fled from the police, and had been warned that he would be tasered if he did not stop and comply with police orders); *see also Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 509 (6th Cir. 2012) ("If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him."); *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (finding use of taser objectively reasonable where the plaintiffs were "actively resisting arrest").

With respect to the force used after Plaintiff was tasered and while he continued to resist arrest, the record before the Court shows that Pagan, Malecki, S. Giancursio, and P. Giancursio used defensive force against Plaintiff as he struggled against them, culminating in a single blow to the side of Plaintiff's face by S. Giancursio. There is no evidence before the Court that the officers used any force against Plaintiff once he was subdued. Further, there is no indication in the record before the Court that Plaintiff suffered anything but minor injuries from the use of force. Viewed from the perspective of the officers at the time, no rational jury could find this use of force unreasonable. *See Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) ("One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force."); *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 407 (S.D.N.Y. 2007) (granting

summary judgment on excessive force claim where the plaintiff fled and resisted arrest, one officer "responded with a single punch to Plaintiff's jaw," and two officers "engaged in a physical struggle with Plaintiff in an effort to subdue him"). On the record before the Court, Plaintiff cannot maintain a claim for assault or battery.

### 2. Intentional Infliction of Emotional Distress Claim

Turning next to Plaintiff's claim for intentional infliction of emotional distress, "[a] lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress." *Csoka v. Cty. of Suffolk*, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2000); *see also Ackridge v. Martinez,* No. 09 CIV. 10400 RJH, 2011 WL 5877778, at *6 (S.D.N.Y. Sept. 26, 2011) (same), *report and recommendation adopted*, 2011 WL 5865265 (S.D.N.Y. Nov. 22, 2011). As discussed above, there is no question in this case that Plaintiff's arrest was lawful. Accordingly, Plaintiff cannot maintain an intentional infliction of emotional distress claim against any of the involved officers.

### 3. Civil Rights Claim

Finally, with respect to Plaintiff's "civil rights" claim against the unknown RPD officers, Plaintiff asserts that such claim is based on violations of his "Fourth, Fifth, Eighth and Fourteenth Amendment Rights," alleges that the unknown officers engaged in "malicious prosecution," arrested Plaintiff without probable cause, and subjected him to an unreasonable search and seizure and excessive use of force, and makes reference to "42 U.S.C. §§ 1981, 1983, 1985, and 1988." (Dkt. 1 at ¶¶ 41-43). Despite this expansive

invocation of legal authority, the record before the Court is insufficient to support any civil rights claim against an individual defendant.

Initially, it is clear that Plaintiff cannot maintain a claim under any of 42 U.S.C. §§ 1981, 1985, and 1988. With respect to § 1981, this statute "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) (citation omitted). Here, there is no evidence of any racial discrimination on the part of any involved parties, and so Plaintiff cannot maintain a claim under § 1981.

Turning to § 1985, which provides a cause of action for a conspiracy to violate civil rights, a "claim for conspiracy under Section 1985 must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Pare v. Valet Park of Am., Inc.*, No. 1:19-CV-0206 LEK DJS, 2020 WL 495038, at *4 (N.D.N.Y. Jan. 30, 2020) (quotation omitted). Again, there is no evidence of discriminatory animus in this case, and Plaintiff cannot maintain a § 1985 claim.

Finally, "§ 1988 does not provide an independent cause of action," *Weiss v. Violet Realty, Inc.*, 160 F. App'x 119, 120 (2d Cir. 2005), but instead provides a mechanism by which particular remedies may be sought in civil rights actions. Plaintiff cannot maintain a claim under § 1988.

Plaintiff's invocation of § 1983 requires further analysis. This statue "provides a mechanism for enforcing individual rights secured elsewhere, *i.e.*, rights independently secured by the Constitution and laws of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (quotations omitted). In this case, Plaintiff makes reference to his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

Plaintiff plainly has no viable claim under the Fifth or Eighth Amendments. With respect to the Fifth Amendment, "[t]he Due Process Clause of the Fifth Amendment applies only to actions by the United States government and federal employees." *Delgado v. Ocasio*, No. 3:19CV1116(MPS), 2019 WL 4038754, at *2 (D. Conn. Aug. 27, 2019) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Plaintiff has sued only state actors in this case, and therefore does not have a claim under the Fifth Amendment.

Plaintiff also does not have a claim under the Eight Amendment, because his claims occurred pre-conviction. *See Hollins v. S. Burlington Police Dep't*, No. 2:18-CV-151, 2020 WL 1033335, at *7 (D. Vt. Mar. 3, 2020) ("Plaintiff cannot state a claim for an Eighth Amendment violation stemming from his arrest on December 16, 2017 because he was a pre-trial detainee at that time."); *Graham v. Ferretti*, No. 14-CV-5815 PKC LB, 2018 WL 1392344, at *3 (E.D.N.Y. Mar. 20, 2018) ("Because the incidents alleged in Plaintiff's [complaint] occurred in connection with her arrests, not after conviction and sentence, the Eighth Amendment does not apply.").

Plaintiff's claims for malicious prosecution and false arrest potentially "implicate [Plaintiff's] right to be free from unreasonable seizure as provided by the Fourth

Amendment and his right to due process as guaranteed by the Fourteenth Amendment." *Shepler v. Collura*, No. 17 CIV. 10254 (ER), 2020 WL 729763, at *4 (S.D.N.Y. Feb. 13, 2020). However, in this case, Plaintiff's grand jury indictment and subsequent conviction foreclose any claims for malicious prosecution or false arrest. "Claims for false arrest, whether brought under § 1983 . . . or under state law, are analyzed pursuant to the same standards as the applicable state law's false arrest tort." *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015). "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000). In particular, a plaintiff claiming false arrest or false imprisonment must show "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. If an officer has probable cause to arrest, the confinement is privileged." *Nzegwu*, 605 F. App'x at 29 (citation and quotation omitted). Similarly, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Bey v. Fernandez*, No. 15-CV-7237 PKC ST, 2018 WL 4259865, at *6 (E.D.N.Y. Sept. 5, 2018) (citations and quotations omitted). Moreover, a plaintiff asserting a malicious prosecution claim in New York must show "that the criminal proceeding terminated in his favor." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997).

"[I]ndictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the

suppression of evidence or other police conduct undertaken in bad faith." *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) (quotation omitted). No such evidence exists in this case and so the grand jury indictment demonstrates the existence of probable cause and forecloses any claim for false arrest or malicious prosecution. Further, Plaintiff cannot maintain a malicious prosecution claim because he cannot show that the criminal proceeding terminated in his favor.

Finally, Plaintiff's claims for unreasonable search and seizure and excessive use of force implicate his rights under the Fourth Amendment. These claims are also not viable. With respect to any claim for excessive use of force, as the Court has already noted, such a claim is evaluated under the same standard as a state law claim for assault and battery. *See Boyler*, 287 F. Supp. 3d at 326. As the Court set forth in detail, no such claim is viable in this case because no reasonable juror could conclude that the force used against Plaintiff was unreasonable.

As to a claim for an unreasonable search and seizure, Plaintiff was lawfully arrested, and the only search referenced in the record before the Court is a booking search of Plaintiff. Such searches are unquestionably permissible under the Fourth Amendment. *See Illinois v. Lafayette*, 462 U.S. 640, 646 (1983) ("At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed.").

For all these reasons, the Court finds that Plaintiff cannot, on the record before it, maintain a claim as to any individual defendant regarding the events referenced in his

Complaint. Accordingly, summary judgment as to Plaintiff's claims against the unknown RPD officers is warranted.

### C. Claims Against the City

The Court lastly considers Plaintiff's claim against the City. Although Plaintiff's Complaint fails to clearly identify the source of this claim, it is clear that it is derivative of the claims against the unknown RPD officers. In particular, the claim appears to be asserted pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Importantly, without an underlying constitutional violation, there can be no liability under *Monell*. *Id*.; *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("Under Second Circuit case law, . . . a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor."), *aff'd*, 409 F. App'x 464 (2d Cir. 2011). In this case, the Court has found that there has been no constitutional violation and so *Monell* is not implicated.

Similarly, to the extent that Plaintiff seeks to assert a claim for vicarious municipal liability under New York State law, such claim must fail because there has been no underlying tort. *See Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 170 (E.D.N.Y. 2018) ("Although a municipality cannot be held vicariously liable on a section 1983 claim, under New York state law, a municipality may be held vicariously liable on state law claims

asserted against individual officers under a theory of respondeat superior. Here, however, there is no basis for a claim of municipal liability because Plaintiff has not alleged a viable claim against [the municipal officers]." ) (citation omitted).

In sum, there is no basis for any claim by Plaintiff against the City and the City is entitled to judgment as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Moving Defendants' motion for summary judgment (Dkt. 10) is granted in its entirety. The Clerk of Court is instructed to enter judgment in favor of all Defendants and to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 27, 2020
      Rochester, New York